No objections to this Report and Recommendation (the "R&R") have been received. I therefore review it for clear error. Finding no error, clear or otherwise, the R&R is adopted as the decision of the Court. The Petition is denied. A certificate of appealability will not issue, and any appeal from this order would not be taken in good faith. See 28 U.S.C. 1915(a); Coppedge v. United States, 369 U.S. 438 (1962). The Clerk shall close the case. Petitioner has not kept the court informed as to his whereabouts. In an excess of caution my chambers will mail a copy of this endorsement to Petitioner at Hudson Correctional Facility, which is where he was most recently housed.

SO ORDERED.

*Cathy Seibel*
CATHY SEIBEL, U.S.D.J.

12/28/23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

QUINCY MCQUAID,

                  Petitioner,

  - *against* -

ROBERT MORTON, Superintendent,
Downstate Correctional Facility,

                  Respondent.

18 Civ. 10705 (CS) (AEK)

**REPORT AND RECOMMENDATION**

**TO: THE HONORABLE CATHY SEIBEL, U.S.D.J.**[1]

      Currently before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by *pro se* Petitioner Quincy McQuaid ("Petitioner"), challenging his judgment of conviction, following a jury trial, for the crimes of robbery in the first degree and attempted robbery in the third degree. ECF No. 1 ("Petition") ¶ 5. The Petition sets forth three purported grounds for habeas relief: (1) the trial court erred in denying Petitioner's motion to set aside the verdict as repugnant; (2) the guilty verdict was against the weight of the evidence because the voice identification of Petitioner was not credible; and (3) the guilty verdict was against the weight of the evidence because the witness's lack of credibility negated the DNA findings. *Id.* ¶ 12.[2]

      For the reasons that follow, I respectfully recommend that the Petition be DENIED.

---

[1] This matter originally was referred to the Honorable Lisa Margaret Smith on January 14, 2019. ECF No. 8. It was reassigned to the undersigned on October 16, 2020.

[2] Petitioner raised these same three claims on direct appeal. *See* ECF No. 11-8 (Petitioner's appellate brief).

## BACKGROUND

The following factual background and procedural history, relevant to Petitioner's claims for habeas relief, are taken from the Petition, Respondent's Affidavit in Opposition to Petition for Writ of Habeas Corpus, ECF No. 11, and Respondent's Exhibits ("Resp. Ex."), ECF Nos. 11-2 through 11-12.

## I.      Factual Background

### A.      The Crimes

In June 2013, Mousa Cherif was employed as a clerk at the Citgo gas station and convenience store—known as the QuikMark—located in Hawthorne, New York.  Cherif often spoke to Petitioner and his companion, Lia Lorusso, who were frequent customers at the store and had been going there four or five times per week over the course of the prior year.  Cherif testified at Petitioner's trial that he knew Petitioner's voice from their frequent conversations.

On June 13, 2013, at about 3:49 a.m., Cherif was working the night shift alone and was sitting behind the cash register when a man entered the store wearing a ski mask over his face, a light gray long-sleeved hooded sweatshirt, jeans, Timberland-style construction boots, and black and white gloves.  The man pointed a gun at Cherif and ordered Cherif to empty the cash register.  Cherif did so, giving the man the contents of the register.  During the incident, Cherif noticed a cigarette drop from the man's left hand onto the counter.  After leaving the store, the man ran away on foot.  Cherif called 911 and his boss.  He picked up the cigarette butt from the counter and threw it into the garbage can, which was otherwise empty.

When police officers arrived at the scene a few minutes later, Cherif described the perpetrator as a black male, even though the man had been masked and Cherif had not seen the man's skin (Petitioner is Caucasian).  Cherif also told one of the officers about the cigarette butt

left behind by the perpetrator that Cherif had thrown in the garbage.  The officer ended up removing the plastic bag that contained the cigarette butt from the garbage can, and the cigarette butt was thereafter removed and placed into an evidence collection bag by the lead detective on the case.

On June 25, 2013, at about 12:31 a.m., Cherif was standing in front of the register when Lorusso arrived at the store with Petitioner.  Lorusso entered the store while Petitioner waited outside in the car.  Cherif waved to Petitioner through the store window, and Petitioner nodded at Cherif.  The vehicle was captured on the store's surveillance video.  Lorusso talked to Cherif, made a couple of purchases, and left the store at 12:35 a.m.; she then got back into the car with Petitioner, who drove away.

At 12:41 a.m., Cherif was at the back of the store when he saw the same man who had robbed him twelve days earlier enter the store and walk directly toward the register.  The man again wore a mask over his face, gloves, jeans, and the same hooded sweatshirt and boots that he had previously worn.  The man also was the same height and had the same build and walk as the perpetrator of the prior robbery.  As Cherif hid behind shelves, the man walked toward the back of the store on the other side of the shelves, calling, "yo."  Cherif then ran for the front door, at which point the man yelled, "yo give me the money."  Cherif recognized the man's voice as Petitioner's voice.

Cherif ran out of the store to a Shell gas station across the street.  The perpetrator ran out of the store right behind Cherif but did not follow him.  The clerk at the Shell gas station called 911.  Cherif got on the phone and reported that the perpetrator was the same person who had committed the prior robbery.  When the police arrived at the scene, Cherif told them that the perpetrator of both robberies was a regular customer.  Cherif stated that he recognized the

perpetrator's voice and that it was the voice of the male companion of a female customer who had made purchases right before the incident occurred.

Cherif pointed out the female customer on the store's surveillance video shown to him by the police.  The police detective recognized the woman as Lorusso and knew her to be Petitioner's girlfriend.  Just hours later, the detective and another police officer observed the vehicle in which Petitioner had been sitting outside the store on June 25, 2013–which was visible in the surveillance video—at Lorusso's home address.  They also learned through a database search that Petitioner was the registered owner of the vehicle.  Later that day, a different police officer located the vehicle in Hawthorne, and after the driver of the vehicle made a right turn without signaling, the officer conducted a traffic stop.  When the officer approached the driver's side of the vehicle, he recognized Petitioner sitting behind the wheel.  Petitioner told the officer that there was an issue with the vehicle's registration—it turned out that the registration had been suspended—and Petitioner was taken to police headquarters.[3]

While at police headquarters, Petitioner asked if he could smoke a cigarette.  The officer who had conducted the traffic stop gave Petitioner a cigarette from the pack that had been recovered from Petitioner's person.  The officer took Petitioner outside to smoke and escorted Petitioner back inside afterwards.  The officer then returned outside to retrieve Petitioner's discarded cigarette butt from the pavement and placed it in an evidence bag.  DNA analysis that was later performed on the cigarette butts, as well as a buccal swab obtained from Petitioner,

---

[3] An inventory search of the vehicle yielded, among other things, a gray hoodie, two black ski masks, and black and white gloves, all matching items worn by the perpetrator in the surveillance videos from the June 13 and June 25 robberies.  Following a pretrial suppression hearing, however, these items were found to have been improperly seized and were suppressed as evidence.  *See* Resp. Ex. 2.

showed that Petitioner's DNA was on the cigarette butt left on the convenience store counter following the robbery on June 13, 2013.

### B. The Trial

Petitioner did not present any witnesses at trial. His defense focused on attacking the credibility of Cherif's identification of Petitioner's voice and the sufficiency of the police investigation. Petitioner also concentrated on Cherif's mistaken description of the masked perpetrator of the June 13, 2013 robbery as a black man. Petitioner conceded that his DNA was on the cigarette, but suggested that another man—who Petitioner knew[4] and who had borrowed Petitioner's car and had access to cigarettes that Petitioner disposed of in the car's ashtray—could have planted it.

After summations, the trial court instructed the jury, using the statutory language regarding the elements of robbery in the first degree, N.Y. Penal Law § 160.15[4], attempted robbery in the third degree, N.Y. Penal Law §§ 110, 160.05, and grand larceny in the fourth degree, N.Y. Penal Law § 155.30[1], without objection by Petitioner. Relevant for purposes of Petitioner's claim for habeas relief, the trial court explained that a conviction for robbery in the first degree required a finding that Petitioner forcibly stole property and, in the course of the commission of the crime or of immediate flight therefrom, displayed what appeared to be a pistol, revolver, rifle, shotgun, machine gun or other firearm. The trial court further explained that a conviction for grand larceny in the fourth degree required a finding that Petitioner stole property and that the value of the property exceeded $1,000. The jury found Petitioner guilty of robbery in the first degree (for the June 13, 2013 incident), attempted robbery in the third degree

---

[4] This other man was identified as Garfield Payne. A Hawthorne police detective testified at trial that Payne was a drug dealer who supplied Lorusso and Petitioner, but the trial court struck that aspect of the testimony and provided the jury with a curative instruction to disregard it.

(for the June 25, 2013 incident), and not guilty of grand larceny in the fourth degree (for the June 13, 2013 incident).

After the verdict was read, but before the jury was discharged, Petitioner moved to set aside the verdict as repugnant because, he contended, the jury could not have found him both guilty of robbery in the first degree and not guilty of grand larceny in the fourth degree.  The court denied Petitioner's motion at that time but granted him leave to submit a written motion pursuant to New York Criminal Procedure Law § 330.30.  Following the briefing of that motion, *see* Resp. Exs. 3-5, the trial court denied the motion in a bench ruling.

On March 24, 2015, Petitioner was sentenced to a determinate term of 12 years imprisonment with five years of post-release supervision for the conviction for robbery in the first degree, and an indeterminate term of 1-1/3 to 4 years imprisonment for the conviction for attempted robbery in the third degree, with the sentences to run concurrently.  Resp. Ex. 6 (sentencing transcript).

## II.     Procedural History

### A.     Petitioner's Direct Appeal

Petitioner, proceeding through counsel, directly appealed his judgment of conviction. Resp. Ex. 7.  On appeal, Petitioner maintained that (1) the trial court erred in denying Petitioner's motion to set aside the verdict as repugnant; (2) the guilty verdict was against the weight of the evidence because Cherif's identification of Petitioner's voice was not credible; and (3) the guilty verdict was against the weight of the evidence because Cherif's lack of credibility negated the DNA findings.  The Appellate Division, Second Department affirmed Petitioner's conviction on May 24, 2017.  *People v. McQuaid*, 150 A.D.3d 1149 (2d Dep't 2017).  The court explained that

> [t]he defendant's contention that the verdict finding him guilty of robbery in the first degree but not guilty of grand larceny in the fourth

>degree was legally repugnant is without merit.  Viewing the verdict solely in terms of the elements as charged to the jury, the acquittal on the count of grand larceny in the fourth degree (Penal Law § 155.30 [1]) did not negate any of the elements of robbery in the first degree (Penal Law § 160.15 [4]) of which the defendant was convicted.

*Id.* at 1149-50 (citations omitted).  With respect to Petitioner's contention that the verdict was against the weight of the evidence, the court added that

>[i]n fulfilling our responsibility to conduct an independent review of the weight of the evidence, we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor.  Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence.

*Id.* at 1150 (citations omitted).

On June 15, 2017, Petitioner filed an application for leave to appeal to the New York Court of Appeals.  Petition ¶ 9(g); Resp. Ex. 10.  The Court of Appeals denied leave to appeal on September 7, 2017.  *People v. McQuaid*, 30 N.Y.3d 952 (2017).

### B.     The Instant Petition

On October 22, 2018, Petitioner filed the Petition,[5] raising the same grounds for relief that he raised in his brief on direct appeal.  *See* Petition ¶ 12 & Attachments A-B.  The action originally was filed in the United States District Court for the Eastern District of New York; it was transferred to this District on November 16, 2018.  *See* ECF Nos. 2, 3.  Respondent filed his opposition papers on March 6, 2019.  ECF No. 11.  Days later, Petitioner filed a motion to hold the Petition in abeyance so that he could exhaust a new claim for ineffective assistance of appellate counsel.  ECF No. 12.  The Court denied that motion on April 26, 2019, finding that

---

[5] Under the prison mailbox rule, the Court deems the Petition filed on the date on which it was delivered to prison authorities for mailing.  *See Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001).  Here, the Petition states that it was placed in the prison mailing system on October 22, 2018.  *See* Petition at 13 (citing the page number assigned by the Electronic Case Filing system).  Accordingly, the Court deems the Petition to have been filed as of that date.

Petitioner's claim of ineffective assistance of appellate counsel was untimely and did not relate back to the claims asserted in the Petition.  ECF No. 18.  Petitioner filed a traverse in further support of the Petition on May 14, 2019.  ECF No. 20.[6]

## DISCUSSION

I. **Standard of Review**

"Habeas review is an extraordinary remedy."  *Bousley v. United States*, 523 U.S. 614, 621 (1998) (citing *Reed v. Farley*, 512 U.S. 339, 354 (1994)).  To be granted a writ of habeas corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C §§ 2244 and 2254.  If a petitioner has met these threshold requirements, a federal district court may hear "an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The court must then determine the appropriate standard of review applicable to the petitioner's claims in accordance with 28 U.S.C § 2254(d).

Generally, a state prisoner has one year from the date his or her conviction becomes final to file a habeas petition in federal court.  28 U.S.C § 2244(d)(1).  This limitations period ordinarily begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  There is no dispute here that the Petition was timely filed.

---

[6] The filing date is again based on the prison mailbox rule.  *See* footnote 5, *supra*.

Under AEDPA, all state court remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1)(A); *see also Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014). "This requires that the prisoner 'fairly present' his [or her] constitutional claim to the state courts, which he [or she] accomplishes by presenting the essential factual and legal premises of his [or her] federal constitutional claim to the highest state court capable of reviewing it." *Jackson*, 763 F.3d at 133 (quotation marks omitted). In the interests of comity and expeditious federal review, "[s]tates should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *see also Daye v. Attorney Gen. of the State of New York*, 696 F.2d 186, 190-91 (2d Cir. 1982).

Provided a claim meets all procedural requirements, the federal court must apply AEDPA's deferential standard of review when a state court has decided a claim on the merits. *See Torres v. Berbary*, 340 F.3d 63, 68 (2d Cir. 2003). Under AEDPA,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent "if 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a

9

set of materially indistinguishable facts.'" *Torres*, 340 F.3d at 68 (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "[A]n 'unreasonable application' of 'clearly established' Supreme Court precedent occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413). While

> it is clear that the question is whether the state court's application of clearly established federal law was objectively unreasonable, the precise method for distinguishing objectively unreasonable decisions from merely erroneous ones is less clear. However, it is well-established in [the Second Circuit] that the objectively unreasonable standard of § 2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief.

*Id.* at 68-69 (cleaned up).

Under the second prong of § 2254(d), the factual findings of state courts are presumed to be correct. *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

II.     **None of Petitioner's Claims are Cognizable on Habeas Review**

    A.     **Petitioner's Claim of a Repugnant Verdict (Ground One)**

Petitioner's first ground for habeas relief is that the state court's rejection of his argument that the jury verdict finding him guilty of robbery in the first degree but not guilty of grand larceny in the fourth degree was repugnant "is an unreasonable determination of facts in light of evidence." Petition ¶ 12 (Ground One) & Attachment A. This claim is not cognizable on habeas review, however, because "federal habeas corpus relief does not lie for errors of state law." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)) (quotation marks omitted). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* (cleaned up). In particular, "[f]ederal law does

not protect a state criminal defendant against inconsistent verdicts, and, thus, it is well settled that inconsistent jury verdicts are not a ground for habeas relief." *Polk v. Annucci*, No. 15-cv-4979 (VSB) (HBP), 2018 WL 6003976, at *9 (S.D.N.Y. Mar. 27, 2018) (quotation marks omitted) (collecting cases), *adopted by* 2018 WL 5999606 (S.D.N.Y. Nov. 15, 2018)[7]; *see also, e.g., Suarez v. Bennett*, 207 F. App'x 114, 116 (2d Cir. 2006) (summary order) (a federal court is "not permitted to grant habeas simply because a jury's verdicts are inconsistent") (citing *Harris v. Rivera*, 454 U.S. 339, 345-48 (1981) (*per curiam*)); *May v. Griffin*, No. 17-cv-6319 (KMK) (JCM), 2021 WL 5450731, at *14 (S.D.N.Y. Mar. 15, 2021) ("a claim of inconsistent or repugnant verdicts is entirely an issue of State law, which presents no issue upon which federal habeas corpus relief could be granted") (cleaned up), *adopted by* 2021 WL 5450346 (S.D.N.Y. Nov. 19, 2021).

Accordingly, I respectfully recommend that the habeas claim raised in Ground One of the Petition be denied.

### B.  Petitioner's Weight of the Evidence Claims (Grounds Two and Three)

Petitioner's remaining two grounds for habeas relief are claims that the verdict was against the weight of the evidence because (1) Cherif's identification of Petitioner's voice was not credible; and (2) Cherif's lack of credibility negated the DNA findings.  Petition ¶ 12 (Ground Two and Ground Three) & Attachment B.  These claims are likewise not cognizable on habeas review.  "A federal habeas court cannot address 'weight of the evidence' claims because a challenge to the verdict based on the weight of the evidence is different from one based on the

---

[7] In accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) and Local Rule 7.2 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, copies of this case and other cases, *infra*, that are unpublished or only available by electronic database shall be simultaneously delivered to *pro se* Petitioner along with this Report and Recommendation.

11

sufficiency of the evidence.  Specifically, the weight of the evidence argument is a pure state law claim whereas a legal sufficiency claim is based on federal due process principles." *Douglas v. Portuondo*, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002) (cleaned up); *see McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011) (summary order) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus[.]"); *May*, 2021 WL 5450731, at *15 ("Petitioner's claim that the verdict was against the weight of the evidence does not raise a federal question appropriate for habeas review.") (quotation marks omitted).  In making "weight of the evidence" arguments, Petitioner does not assert federal claims as required by 28 U.S.C. § 2254(a)—rather, Petitioner raises alleged errors of state law, for which federal habeas review is not available.  *See Douglas*, 232 F. Supp. 2d at 116; *Estelle*, 502 U.S. at 68 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Accordingly, I respectfully recommend that the habeas claims raised in Grounds Two and Three of the Petition be denied.[8]

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the Petition be DENIED in its entirety.  Because I recommend that the Petition be denied, I also respectfully recommend that Petitioner's request for an evidentiary hearing, *see* Petition at 15, be denied as moot.  As the Petition presents no questions of substance for appellate review, I further respectfully recommend that a certificate of probable cause should not issue, *see Rodriquez v. Scully*, 905 F.2d 24 (2d Cir. 1990) (*per curiam*); *Alexander v. Harris*, 595 F.2d 87, 90, 91 (2d Cir. 1979) (*per curiam*), and that the Court certify pursuant to 28 U.S.C. § 1915(a) that an appeal from this order would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438 (1962).

---

[8] To the extent that Petitioner's reply papers could be read to challenge—for the first time—the legal *sufficiency* of the evidence supporting the verdict, *see* ECF No. 20 at 6-7, any legal sufficiency claim is unexhausted, because Petitioner never raised a legal sufficiency claim on direct appeal.  Because such a claim would be based on the trial record, and Petitioner did not raise it on direct appeal, Petitioner could not now raise it in state court in a New York Criminal Procedure Law § 440.10 motion.  *See* N.Y. Crim. Proc. Law § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when: . . . [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure . . . to raise such ground or issue upon an appeal actually perfected by him or her[.]").  Any legal sufficiency claim may therefore be deemed exhausted but procedurally defaulted, and not a proper basis for federal habeas relief.  *See Jackson*, 763 F.3d at 143-44.  Petitioner cannot overcome the procedural default unless he can show cause for the default and prejudice arising therefrom, or that failure to consider the claim will result in a fundamental miscarriage of justice.  *See Coleman*, 501 U.S. at 750; *see also DiSimone v. Phillips*, 461 F.3d 181, 190-91 (2d Cir. 2006) ("Where a petitioner has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the petitioner can first demonstrate either cause and actual prejudice, or that he [or she] is actually innocent.") (quoting *Bousley*, 523 U.S. at 622) (cleaned up).  Petitioner has not attempted to make any such showing here.  Accordingly, even if the Petition were to be construed as raising a claim based on the legal sufficiency of the evidence presented at trial, I respectfully recommend that such claim be denied.

13

NOTICE

Pursuant to 28 U.S.C § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made by mail). A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any responses to such objections, shall be filed with the Clerk of Court with courtesy copies delivered to the chambers of the Honorable Cathy Seibel, United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the Honorable Andrew E. Krause at the same address.

Any request for an extension of time for filing objections or responses to objections must be directed to Judge Seibel, and not to the undersigned.

**Failure to file timely objections to this Report and Recommendation will result in a waiver of objections and will preclude appellate review.** *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Campbell*, 787 F.3d 93, 102 (2d Cir. 2015).

Dated: December 4, 2023
White Plains, New York

Respectfully submitted,

_____
ANDREW E. KRAUSE
United States Magistrate Judge

A copy of this Report and Recommendation has been mailed to Petitioner by Chambers staff to the Hudson Correctional Facility, which is where, according to the New York State Department of Corrections and Community Supervision's "Incarcerated Lookup" website, Petitioner was most recently housed. *See* www.nysdoccslookup.doccs.ny.gov (last visited December 4, 2023).